*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2264**

In re the Marriage of: Stephen Joseph Moore, petitioner,
Appellant,

vs.

Lisa Jo Jacobson, f/k/a Lisa Jo Moore,
Respondent.

**Filed March 2, 2015
Affirmed
Larkin, Judge**

Washington County District Court
File No. 82-FA-08-7428

James J. Vedder, Moss & Barnett, Minneapolis, Minnesota (for appellant)

Susan D. Olson, Susan D. Olson, PLLC, Stillwater, Minnesota (for respondent)

Considered and decided by Halbrooks, Presiding Judge; Johnson, Judge; and Larkin, Judge.

**U N P U B L I S H E D   O P I N I O N**

**LARKIN**, Judge

In this marital-dissolution dispute, appellant-husband challenges the district court's award of half of his PERA disability benefit to respondent-wife and its award of conduct-based attorney fees. We affirm.

## FACTS

In April 2010, the district court entered a judgment and decree dissolving the marriage of appellant Stephen Joseph Moore and respondent Lisa Jo Jacobson. The district court found that Moore "has a defined benefit pension plan through the Public Employees Retirement Association (PERA)." The district court found that if Moore "were to have terminated his employment on May 31, 2009, it would pay him $3,550.79 per month at a retirement age of 55." The district court awarded Jacobson as property "fifty percent (50%) of [Moore's] pension, using a valuation date of November 1, 2009." Later, the district court issued an order "clarifying and amending" the property division in the dissolution judgment as follows:

> [Moore's] Pension. [Jacobson] is awarded fifty percent of the marital portion of [Moore's] pension valued as of November 1, 2009. [Jacobson's] interest in the plan shall be one-half the amount of each monthly benefit, multiplied by a fraction, the numerator of which is the number of years the parties were married during which [Moore] was a contributing member to PERA and the denominator of which shall be the total number of years [Moore] was a contributing member of PERA at the time of his termination.

In 2012, Jacobson submitted a proposed domestic relations order (DRO) to the district court. The district court filed the DRO on June 6. The DRO directed PERA to pay Jacobson a "fixed percentage of [Moore's] interest in the pension plan" based on a percentage of Moore's "monthly *retirement and disability* benefit" (emphasis added). Moore asked the court to vacate the June 6 DRO because "it was submitted over the objection of Mr. Moore and does not comport with the Order Clarifying and Amending Judgment and Decree." The district court vacated the June 6 DRO.

2

Next, Moore submitted his proposed DRO, which the district court filed on July 12. Unlike the June 6 DRO, the July 12 DRO did not refer to a "monthly retirement and disability benefit." It stated that "[Jacobson's] interest in the plan shall be one-half the amount of each *monthly benefit*" (emphasis added). On August 2, Moore proposed an amended DRO. In a letter accompanying the proposed order, Moore explained that the "only change from the DRO filed on July 12, 2012 is the addition of the word 'retirement' before the word 'benefit.'" The district court filed the amended DRO on August 2. The August 2 DRO stated, in relevant part, that "[Jacobson's] interest in the plan shall be one-half the amount of each monthly *retirement* benefit" (emphasis added).

Moore left his job as a police officer with the City of Minneapolis in September 2012 because of a work-related injury and began receiving a monthly disability benefit of $3,526.49 through his PERA plan.

In February 2013, Jacobson moved the district court for an order (1) "[f]inding that [Moore] impermissibly altered [her] property award when he offered the Amended Domestic Relations Orders dated July 12, 2012 and August 2, 2012"; (2) "[f]inding that [she] is entitled to one-half of the marital share of [Moore's] disability payments"; (3) "[v]acating the July 12, 2012 and August 2, 2012 Domestic Relations Orders"; and (4) "[r]einstating the Domestic Relations Order originally entered by the court on June 6, 2012."

Moore opposed Jacobson's motion and moved the district court for an order as follows:

> In the event the court finds that the division of the PERA applied to more than the retirement portion thereof, which would be contrary to the language in the Judgment and Decree, then reopening the Judgment and Decree as it would be prospectively unfair, pursuant to [Minn. Stat.] § 518.145, subd. 2(5).

Moore submitted an affidavit in support of his motion, stating that he is disabled and can no longer work as a police officer. Moore also stated that he received monthly disability payments of $3,526.49, earned $430 a month working as a church youth director, and earned $700 a month teaching at a technical college. Moore noted that his total monthly income of $4,656.49 was "significantly less than [his] average gross monthly income of $5,988 as a police officer with the City of Minneapolis." Moore pointed out that "[i]f the disability [benefit] were divided in half[, his] total gross monthly income would be $2,893.25, less than half the income [he] had at the time of the Judgment and Decree." Lastly, Moore noted that his child-support payments of $1,114 per month were "based on [the] full amount of [his] disability payments."

The district court heard oral arguments on the motions and ruled in a written order filed May 7. The district court concluded that "[Moore's] disability benefits are included within his PERA pension benefits and are not separate and distinct." The district court further concluded that "[t]he plain language of the Amended Decree awarded [Jacobson] half of [Moore's] PERA pension benefits"; "[Jacobson] is entitled to half of the marital portion of [Moore's] PERA pension benefits . . . includ[ing] [Moore's] disability payments"; and "[t]he Amended DROs submitted by [Moore] altered [Jacobson's] interest in [Moore's] PERA pension benefits." But the district court also concluded that

4

"[i]t would be unjust to award [Jacobson] half of [Moore's] disability payments when [Jacobson] already receives a portion of those payments as child support."

The district court vacated all of the previously issued DROs and ordered that "counsel for [Jacobson] shall submit a Domestic Relations Order nearly identical to the June 6, 2012, Domestic Relations Order except the submitted order shall be effective May 1, 2013." The district court also ordered that Moore "may bring a motion to modify his child support obligation effective the month [Jacobson] receives [Moore's] pension benefits." The district court did not explicitly address Moore's request to reopen the judgment and decree, but it denied "[a]ll other motions not specifically addressed."

The new DRO was filed on May 23, 2013, and Jacobson began receiving her share of Moore's PERA disability benefit on July 1. The parties stipulated to a modification of Moore's child-support obligation based on Jacobson's receipt of her share of Moore's PERA benefit, reducing Moore's obligation to $609 per month.

Moore moved the district court to amend the May 7 order. Moore requested, among other things, that the district court amend its first conclusion of law to read: "[Moore's] PERA pension benefits do not include his disability benefits." Moore also asked the district court to delete the second conclusion, which stated: "[t]he plain language of the Amended Decree awarded [Jacobson] half of [Moore's] PERA pension benefits." In the alternative, Moore requested that the district court add a conclusion of law reopening the judgment and decree "to make a just and equitable division of the disability portion of the PERA pursuant to Minn. Stat. § 518.58, subd. 1." Jacobson opposed Moore's motion and requested an award of attorney fees.

5

In a written order filed September 30, the district court found that Moore "raised the same arguments and issues in this motion as he raised in the original motion heard in March" and construed Moore's motion as a motion to reconsider the May 7 order. The district court concluded that the May 7 order was "the correct decision under the law and the terms of the final Judgment and Decree and Order Clarifying Judgment and Decree." The district court further concluded that Moore "has unreasonabl[y] contributed to the length of these proceedings and [has] increase[d] the cost of this matter by bringing his present motion." The district court denied Moore's motion and awarded Jacobson $500 in conduct-based attorney fees.

Moore appealed. This court stayed the appeal pending mediation. The parties reached a partial agreement, and this court returned the unresolved issues to the appeal process. Moore moved this court to stay the appeal pending a district court ruling on a motion he filed seeking to reopen the judgment and decree. This court denied Moore's request to stay the appeal.

**D E C I S I O N**

**I.**

Moore argues that "the district court abused its discretion by failing to make findings to support the denial of [his] motion to reopen the judgment and decree on the award of the PERA." In district court, Moore argued that "it would be prospectively unfair" if "the court finds that the division of the PERA applied to more than the retirement portion."

Under Minn. Stat. § 518.145, subds. 2, 2(5) (2014),

> the court may relieve a party from a judgment and decree, order, or proceeding under this chapter . . . and may order a new trial or grant other relief as may be just for the following reasons:
>
> . . . .
>
> . . . it is no longer equitable that the judgment and decree or order should have prospective application.

A party who seeks to reopen a dissolution judgment bears the burden of proof. *Haefele v. Haefele*, 621 N.W.2d 758, 765 (Minn. App. 2001), *review denied* (Minn. Feb. 21, 2001). "[T]o reopen a judgment and decree because prospective application is no longer equitable, the inequity must result from the development of circumstances substantially altering the information known when the dissolution judgment and decree was entered." *Thompson v. Thompson*, 739 N.W.2d 424, 430 (Minn. App. 2007) (quotation omitted). More than "merely a new set of circumstances or an unforeseen change of a known circumstance" is required. *Id.* at 430-31. The district court considers "whether there is inequity in prospective application of the judgment and decree as a result of the development of circumstances beyond the parties' control that substantially alter the information known when the judgment and decree was entered." *Id.* at 431. A district court's refusal to reopen a judgment will not be disturbed absent an abuse of discretion. *Harding v. Harding*, 620 N.W.2d 920, 922 (Minn. App. 2001), *review denied* (Minn. Apr. 17, 2001).

Moore argues that the district court did not make "sufficiently detailed findings of fact to demonstrate its consideration of all factors relevant to the award" and that the case must be remanded to the district court for findings. Jacobson counters that this court can review and affirm the district court's decision despite the lack of findings, because Moore

cannot show prejudice. Jacobson's argument is persuasive. Although effective appellate review "is possible only when the [district] court has issued sufficiently detailed findings of fact to demonstrate its consideration of all [relevant] factors," *Stich v. Stich*, 435 N.W.2d 52, 53 (Minn. 1989), "failure to make findings is not, alone, sufficient to constitute an abuse of discretion." *Prahl v. Prahl*, 627 N.W.2d 698, 704 (Minn. App. 2001). The burden of showing error rests upon the party who asserts it, and appellate courts "do not reverse unless there is error causing harm to the appealing party." *Loth v. Loth*, 227 Minn. 387, 392, 35 N.W.2d 542, 546 (1949) (quotation omitted); *see also* Minn. R. Civ. P. 61 (requiring harmless error to be ignored).

Moore does not identify the development of circumstances since entry of the dissolution judgment that substantially altered the information known when the judgment was entered. *See Thompson*, 739 N.W.2d at 430. And the record does not suggest the existence of such circumstances. In district court, Moore acknowledged that he "had sustained injuries while at work." Moore testified that he had a knee injury that resulted in a light-duty assignment and that he could no longer work overtime or take side jobs as a result of the injury. Moore also testified that he did not want to work until retirement age. It is undisputed that Moore was aware of all of these facts when the dissolution judgment was entered. In sum, Moore's own testimony suggests that a disability-based retirement was a known possibility when the judgment was entered. In addition, Moore offered a PERA document as an exhibit, which he claimed "outline[d] PERA's legal wording if the pension is divided [and] how it's divided." The document defines pension

benefits as "[m]onthly payments made to a member who has retired *or become disabled*" (emphasis added).

In sum, Moore has not identified the changed circumstances necessary to reopen the dissolution judgment on the theory that it is no longer equitable. Because he fails to show a basis for the relief he seeks, we fail to see how he was prejudiced by the district court's failure to make findings supporting the denial of his motion to reopen the judgment and decree. Thus, Moore has not met his burden to show error causing him harm, and the district court's failure to make findings is not grounds for remand. *See Loth*, 227 Minn. at 392, 35 N.W.2d at 546; *see also Tuthill v. Tuthill*, 399 N.W.2d 230, 232 (Minn. App. 1987) (refusing to remand, in a maintenance-modification proceeding, for findings regarding the amount and duration of a maintenance award when the moving party failed to show the existence of the changed circumstances necessary to modify that award). The district court's refusal to reopen the dissolution judgment is not an abuse of discretion.

## II.

Moore argues that the district court erred by modifying the PERA award in the dissolution judgment to include the disability portion of his PERA benefit. Specifically, Moore argues that the district court's interpretation of its PERA award "was contrary to the plain language therein, which resulted in a significant change to the award to both parties."

The dissolution judgment divided Moore's PERA pension. Subsequently, the district court ruled that Moore's "disability benefits are included within his PERA

9

benefits and are not separate and distinct," and therefore that the division of Moore's PERA pension included a division of PERA disability benefits derived from that pension. Based on the assumption that his PERA disability benefit is separate from his PERA pension, Moore argues that the district court's treatment of his PERA disability benefit as part of his pension constituted an improper "modification" of the dissolution judgment's property division, was "contrary to the plain language" of the judgment, and constituted "a significant change to the award to both parties." Essentially, Moore argues that the district court misread its own dissolution judgment.

The crux of Moore's argument is conclusion of law 18 of the district court's judgment. Conclusion of law 18 is titled "Retirement account awards," and it includes three subheadings: "a. Petitioner's Deferred Compensation"; "b. Petitioner's Pension"; and "c. QDROs." Moore argues that the word "retirement" in the heading of conclusion of law 18 qualifies the term "pension" in conclusion of law 18b, and hence that under "[t]he plain language of the Judgment and Decree," "pension" in conclusion of law 18b refers to only the retirement portion of his PERA pension, and not to the PERA disability benefit paid by that plan.[1]

Generally, unambiguous provisions in a dissolution judgment are given their plain meaning. *Starr v. Starr*, 312 Minn. 561, 562-63, 251 N.W.2d 341, 342 (Minn. 1977). Whether a provision in a dissolution judgment is ambiguous is a legal question; what an ambiguous provision means is a factual question. *Tarlan v. Sorensen*, 702 N.W.2d 915,

---

[1] We note and appreciate the candor of Moore's counsel in conceding that if "[t]he district court . . . merely made an award of 50% of [Moore's] pension, [it] would have included both the disability and retirement portions of [his] pension."

10

919 (Minn. App. 2005). Ambiguity exists if a provision in a dissolution judgment is reasonably subject to more than one interpretation. *In re Estate of Rock*, 612 N.W.2d 891, 894 (Minn. App. 2000). This court has previously rejected the idea that PERA "pension benefits or rights are retirement benefits only and distinguishable from disability benefits." *Walswick-Boutwell v. Boutwell*, 663 N.W.2d 20, 23 (Minn. App. 2003), *review denied* (Minn. Aug. 19, 2003). Therefore, we have significant doubts about whether conclusions of law 18 and 18b of the judgment are, in fact, ambiguous.

To the extent that conclusion of law 18b is ambiguous regarding whether the division of Moore's PERA pension refers only to his PERA retirement benefit or also includes his PERA disability benefit, resolution of the ambiguity presents a fact question. *See Tarlan*, 702 N.W.2d at 919. To obtain relief on appeal, Moore must show that the district court clearly erred in reading conclusion of law 18b to refer to both his retirement and disability benefits. *See* Minn. R. Civ. P. 52.01 (stating that findings of fact are not set aside unless clearly erroneous). A district court's "construction of its own ruling is given great weight on appeal." *Tarlan*, 702 N.W.2d at 919.

On this record, we cannot say that Moore has shown that the district court clearly erred in ruling that conclusions of law 18 and 18b divided his PERA disability benefit. Although the heading of conclusion of law 18 refers to "retirement account awards" and the parties did not expressly mention Moore's PERA disability benefit at trial, Moore testified that a work-related injury limited the number of hours he could work and that, as a result of the injury, he wanted to stop working before age 55, the retirement age discussed on the record. Because Moore's testimony invoked the possibility of his

11

receipt of a disability benefit, it supports the district court's finding that the division of Moore's PERA pension included a division of his PERA disability benefit. On this record we cannot say that the district court clearly erred in its resolution of any ambiguity in conclusions of law 18 and 18b. *See Vangsness v. Vangsness*, 607 N.W.2d 468, 474 (Minn. App. 2000) (stating that the mere fact that the record "might support findings other than those made by the trial court does not show that the court's findings are defective").

Given this court's prior holding that PERA includes both retirement and disability benefits and the record evidence showing that Moore's termination of full-time employment prior to age 55 based on a disability was not just foreseeable but also contemplated, Moore has not shown that the district court clearly erred by ruling that under the judgment and decree, "PERA pension benefits include [Moore's] disability benefits."[2]

---

[2] Moreover, if Moore is correct and conclusions of law 18 and 18b did not address Moore's PERA disability benefits, those benefits would constitute "omitted property" that the district court would be able to divide. *See Neubauer v. Neubauer*, 433 N.W.2d 456, 461 n.1 (Minn. App. 1988) (stating that pension benefits omitted from a property division in an otherwise final dissolution judgment could later be divided as "omitted property"), *review denied* (Minn. Mar. 17, 1989). On this record, the conclusion is inescapable that, if the district court were to divide Moore's PERA benefits at this time, it would award Jacobson half of those benefits. Thus, even if we were convinced that the dissolution judgment did not divide Moore's PERA disability benefits, we would not remand this case on this point. *See Grein v. Grein*, 364 N.W.2d 383, 387 (Minn. 1985) (declining to remand and affirming the district court when, "from reading the files, the record, and the court's findings, on remand the [district] court would undoubtedly make findings that comport with the statutory language" and reach the same result).

## III.

Moore argues that the district court abused its discretion by awarding Jacobson $500 in conduct-based attorney fees under Minn. Stat. § 518.14, subd. 1 (2014). Under section 518.14, subdivision 1, the district court may "award[], in its discretion, additional fees, costs, and disbursements against a party who unreasonably contributes to the length or expense of the proceeding." Conduct-based attorney fees must be based on behavior occurring during the litigation, and the court must identify the specific conduct on which it bases the fee award. *Geske v. Marcolina*, 624 N.W.2d 813, 819 (Minn. App. 2001). The district court must set forth findings that "permit meaningful appellate review on the question whether attorney fees are appropriate because of a party's conduct." *Kronick v. Kronick*, 482 N.W.2d 533, 536 (Minn. App. 1992). But "[a]n award of attorney fees rests almost entirely within the discretion of the [district] court and will not be disturbed absent a clear abuse of discretion." *Crosby v. Crosby*, 587 N.W.2d 292, 298 (Minn. App. 1998) (quotation omitted), *review denied* (Minn. Feb. 18, 1999).

The district court found that Moore's motion to amend the May 7, 2013 order "raised the same arguments and issues . . . as he raised in the original motion heard in March" and that the motion merely sought to reconsider the district court's prior rulings. Thus, the district court concluded that "[i]t was an unnecessary motion that unreasonably caused [Jacobson] to incur additional attorney fees and costs" and "unreasonabl[y] contributed to the length of these proceedings."

Moore's argument that "the district court appeared to misconstrue the purpose of [his] motion to amend" and that he was "seeking to rectify errors at the district court level

before raising the issues with the court of appeals" is disingenuous. Moore's motion to "amend" is reasonably viewed as a request for the district court to reverse its May 7 order. Under the circumstances here, the district court's award of conduct-based attorney fees was not a clear abuse of discretion.

**Affirmed.**